IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WILLIE LEE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-063 |
| | ) | |
| DR. YVONNE NEAU; NURSE BARROWS | ) | |
| AUSTIN; SICK CALL NURSE TAMELA | ) | |
| WELLS; AMY WILLIAMS, Medical | ) | |
| Administrator / Supervisor; and | ) | |
| MEDICAL NURSE STAFF, | ) | |
| | ) | |
| Defendants.[1] | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, incarcerated at Dodge State Prison, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. Because Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*). The Court screened the original complaint and allowed individual capacity claims to proceed against Defendants Neau and Williams based on Plaintiff's allegations of deliberate indifference to a serious medical need. (See doc. no. 12.) All other claims and Defendants were dismissed. (See doc. nos. 10, 22.)

---

[1]The Court **DIRECTS** the **CLERK** to update the list of Defendants on the docket in accordance with the above-caption, which is consistent with the amended complaint and the substantive description therein, as is discussed below. (See doc. no. 41.)

Defendants Neau and Williams answered on October 27, 2025, (doc. no. 29), and the Clerk of Court issued a Scheduling Notice setting the deadline for amendment of pleadings to December 25, 2025, (doc. no. 31). Plaintiff filed a motion to amend, which the Court recognized he was permitted to do once as a matter of right based on the timing of his request, and directed him to submit a complete amended complaint. (See doc. no. 37.) The Court cautioned Plaintiff his amended complaint would be screened based on his IFP status, and should he leave out or change information from the original complaint, any Defendant or claim already in the case may be dismissed. (Id. at 3 (citations omitted).) The amended complaint is now before the Court for screening. (Doc. no. 41.)

## I.     Screening the Amended Complaint

### A.     Background

Plaintiff names the following Defendants: (1) Dr. Yvonne Neau; (2) Nurse Barrows Austin; (3) Sick Call Nurse Tamela Wells; (4) Amy Williams, Medical Administrator / Supervisor; and (5) Medical Staff Nurses. (See id.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

After being seen in the WCF medical department in March 2024, Plaintiff was taken off the insulin he had been receiving for his diabetes. (Id. at 4; doc. no. 41-1, p. 2.) At Plaintiff's May 2, 2024 medical appointment, Defendant Neau recognized Plaintiff's AC1 level had increased from 5.1 to 6.8 since he had been taken off insulin, and although Dr. Neau said she would put Plaintiff back on insulin, that did not occur. (Doc. no. 41-1, p. 2.) Plaintiff's neuropathy worsened while Plaintiff was off the insulin, causing him pain. (Id. at 1-2.) Defendant Wells, a sick call nurse, who saw Plaintiff at some unidentified time while he was off the insulin, did not provide him medical aid for his pain. (Id. at 2.) Defendant Austin, another nurse at WCF who treated Plaintiff at some unspecified time, also failed to provide

"adequate and safe medical care" by failing to recognize Plaintiff should not have been taken off insulin. (Id. at 3-4.)

Plaintiff's condition worsened, and he filed a grievance about his lack of medical treatment, which the Medical Supervisor, Defendant Williams, failed to properly investigate and failed to take corrective action on to get treatment for Plaintiff's deteriorating condition. (Id. at 4-5.)  Similarly, the "Medical Staff Nurses" who worked the "finger stick log" for Plaintiff's blood sugar levels failed to administer insulin unless Plaintiff saw a doctor, even though they saw his blood sugar levels steadily increasing to dangerously high levels. (Id. at 5-6.)  Refusing to provide insulin until Plaintiff saw a doctor exacerbated Plaintiff's neuropathy and attendant pain. (Id. at 6.)

Plaintiff seeks compensatory and punitive damages, to include his pain and suffering and any future medical expenses if his diabetes worsens. (Id. at 7.)

## B.    Discussion

### 1.    Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint.  See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.    Plaintiff Fails to State a Claim Against Defendants Austin, Wells, or Medical Nurse Staff

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege that:  (1) he had a serious medical need –the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th

Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim). In particular, the plaintiff must first demonstrate he suffered a "objectively, sufficiently serious" deprivation. Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

After this initial threshold question, the plaintiff must also demonstrate a defendant acted with "subjective recklessness as used in the criminal law" by showing a defendant was "actually, subjectively aware his [or her] own conduct caused a substantial risk of serious harm to the plaintiff," but even if a defendant knew of that substantial risk, he or she is not liable under the Eighth Amendment if they "responded reasonably to the risk." Wade, 106 F.4th at 1262 (citing Farmer, 511 U.S. at 839, 844-45). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (per curiam) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to

the prisoner be "perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . .").  Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Smith v. Florida Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010).

As to Defendants Austin and Wells, Plaintiff's lack of factual detail about their treatment relationship to him is fatal to his claims.  In conclusory fashion, Plaintiff alleges these two nurses, on an unspecified date and in an unspecified way, failed to provide "adequate medical care." Plaintiff does not describe when, during his alleged months-long wait to be put back on insulin, he saw either of these Defendants.  Nor does he describe his "pain and suffering" that they are alleged to have ignored, or even that they saw him on more than one occasion to know his condition was deteriorating.  While misdiagnosing Plaintiff during one visit may be negligent, it is not a constitutional violation.  See Campbell, 169 F.3d at 1363-72.  Stated otherwise, Plaintiff has not alleged either Defendant "was actually, subjectively aware [their] own conduct caused a substantial risk of serious harm to the plaintiff."  Wade, 106 F.4th at 1262.  At best, Plaintiff has alleged Defendant Austin should have known that a diabetic like Plaintiff should not have been taken off insulin and that Defendant Wells should have known Plaintiff's condition would worsen and give rise to the need for pain medicine.  But Plaintiff provides no details that either Defendant subjectively knew that a decision made during one visit with Plaintiff (indeed, Plaintiff provides no details about how many times he may have been seen, or describe his

condition whenever he may have been seen, by either Defendant), would cause a substantial risk of harm. Nor does Plaintiff describe any specific harm or deterioration of his condition caused by his elevated sugar levels, as his claim for damages is tied to "future medical expenses if [his] condition worsen[s]." (Doc. no. 41-1, p. 7.)

Likewise, Plaintiff's claim against the general group of "Medical Nurse Staff" fails because his conclusory allegations, devoid of detail beyond stating this general group ignored his treatment needs or did not carry out doctor's orders, fails to put any particular individual on notice of alleged wrongdoing. Plaintiff thus fails to state a claim for relief against the non-specific entity of "Medical Nurse Staff." See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law); Hernandez v. Florida Dep't of Corr., 281 F. App'x 862, 866-67 (11th Cir. 2008) (per curiam) (rejecting claim against prison where the plaintiff failed to allege decision making officials took specific actions amounting to a constitutional violation).

For the sake of completeness, the Court also notes that although Core Civic is not named as Defendant, Plaintiff suggests the corporate operator of WCF has a policy of delaying appropriate treatment for diabetes. (Doc. no. 41-1, p. 6.) But even if he had named Core Civic as a Defendant, he fails to identify the corporate policy that is allegedly in place. The law is well established that "[l]iability under § 1983 cannot be based on a theory of vicarious liability."[2] Ireland v. Prummell, 53 F.4th 1274, 1289 (11th Cir. 2022) (citation omitted); Roy v. Ivy, 53 F.4th 1338, 1347 (11th Cir. 2022) ("[Section] 1983 does not provide for liability under a theory of respondeat superior. . . ." (citation omitted)); Est. of Hand by & through Hand v. Florida Dep't of

---

[2]There is no dispute Defendant Core Civic is considered a state actor for the purposes of § 1983 in this instance where it provides medical services to prisoners on behalf of the State. See Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011).

Corr., No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (*per curiam*) (explaining medical provider's liability cannot be based on "a theory of *respondeat superior* or vicarious liability alone").  In other words, a private entity contracting to provide medical services "may be held liable under § 1983 if its policy or custom causes the plaintiff's injury." Roy, 53 F.4th at 1347; Denham v. Corizon Health, Inc., 675 F. App'x 935, 940 (11th Cir. 2017) (*per curiam*); Massey v. Montgomery Cnty. Det. Facility, 646 F. App'x 777, 780 (11th Cir. 2016) (*per curiam*). However, "[p]roof of a single incident of an unconstitutional activity is insufficient to show a custom, which must be such 'a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Roy, 53 F.4th at 1347 (citation omitted); see also Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1311 (11th Cir. 2011) (concluding prisoner could not demonstrate private medical provider followed unconstitutional policy or custom where he "did not even present evidence that these practices had been employed by [the provider] for any other detainees").

Here, Plaintiff fails to identify a policy or custom of the company that allegedly caused him harm beyond suggesting he was improperly taken off insulin, and he fails to allege other diabetics were taken off insulin as part of a widespread policy or custom.  Thus, even if he had named Core Civic as a stand-alone Defendant, he fails to state a viable deliberate indifference claim against the corporation.  See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997) (*per curiam*) (explaining essential element of § 1983 claim that must be proven for corporate contractor's liability is establishment of policy or custom resulting in alleged constitutional deprivation); see also Estate of Hand, 2023 WL 119426, at *6 (explaining imposition of § 1983 liability against corporate entity providing healthcare to prisoners requires establishing (1) a violation of constitutional rights, (2) custom or policy of corporate entity constituting

deliberate indifference to that right; and (3) the policy or custom caused the violation (citing McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004))).

### 3.      Official Capacity Monetary Damages

To the extent Plaintiff is attempting to sue Defendants in their official capacity and as state actors, the Eleventh Amendment bars official capacity claims against state officials for money damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, Plaintiff's official capacity claims for monetary relief against all state actor Defendants fail as a matter of law and should be dismissed.

## II.     Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants Austin, Wells, and Medical Nurse Staff, as well as any official capacity claims for monetary damages brought against state actors, be **DISMISSED** from this case for failure to state a claim. The case should proceed against Defendants Neau and Williams.

SO REPORTED and RECOMMENDED this 27th day of February, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA